IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:10-CR-100 |
| | ) | |
| FRANKLIN DELANO JEFFRIES, | ) | (PHILLIPS/SHIRLEY) |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case came before the Court on January 13, 2011, for a motion hearing on the Defendant's Motion for Temporary Release [Doc. 54], filed January 6, 2011, and his sealed Emergency Motion for Continuance [Doc. 69], filed on January 11, 2011. Assistant United States Attorney Kelly A. Norris appeared on behalf of the Government. Attorneys Ralph E. Harwell and Jonathan Patrick Harwell represented the Defendant, who was permitted to waive his appearance at the hearing. At the hearing, the Court addressed three issues: (1) whether the hearing should be sealed, (2) whether the trial should be continued, and (3) whether the Defendant should be temporarily released into the custody of defense counsel so that he can aid in the preparation of his defense. The Court analyzes each of these issues in turn.

1

## I. SEALING THE HEARING

On January 11, the Defendant filed his Emergency Motion for Continuance and the supporting legal memoranda provisionally under seal and moved [Doc. 63] for leave to seal the motion and memoranda, stating that these pleadings contain private information that should not be made available to the public.[1] The Government also provisionally sealed its response [Doc. 67] and moved [Doc. 66] that the Court permit the response to be filed under seal. At the January 13 hearing, the Defendant asked that the courtroom be sealed because his motion to continue contained information about his mental health. Moreover, defense counsel noted that recent newspaper articles about this case revealed that the information contained in his motion might be publicized. Defense counsel acknowledged that no one aside from the parties, the Court staff, and the Defendant's family was present for the hearing.

The Government stated that its response did not contain any reference to the Defendant's mental health information but that it had moved to seal the response because it did not want to create the very problem that the Defendant's motion predicted, that of the public and the media comparing the Defendant's case to the recent shooting in Arizona. It had no objection to the Court hearing the motion to continue in open court.

As a general matter, criminal hearings are conducted in public because the Constitution grants defendants the right to a public trial. U.S. Const., 6th Am. "The right to an open public trial is a shared right of the accused and the public, the common concern being the assurance of fairness." Press-Enterprise Co. V. Sup. Ct of Cal. for Riverside County, 478 U.S. 1, 8 (1986).

---

[1] District Judge Phillips granted [Doc. 68] the Defendant's motion to seal his motion to continue and memorandum on January 12, 2011, but the undersigned was not aware of this Order, which was docketed at 11:56 a.m. on January 13, at the time of the 3:30 p.m. hearing.

The Court finds that one of the factors that it must consider in deciding whether the ends of justice require a continuance of a criminal trial is the *public's* interest in a speedy trial. 18 U.S.C. § 3161(h)(7)(A). After reviewing the Defendant's concerns in this case, the Court declined to seal the January 13 motion hearing or this Order, determining that any references to the Defendant's mental health issues could be discussed in general terms. Accordingly, the Government's motion to seal its response [**Doc. 66**] is **DENIED**.

## II. CONTINUANCE

The Defendant asks [Doc. 69] for a brief continuance of the January 19, 2011 trial in this case to prevent the jury pool from being prejudiced by publicity on the January 8, 2011 shooting of a federal judge and a United States congresswoman in Tucson, Arizona. The Defendant, who is charged with transmitting a threat in interstate commerce in the form of a video containing a threat to injure and kill a Knox County Chancellor, points to a number of parallels between his case and the Arizona shooting incident. He argues that the intense and prolific media coverage on the Arizona shooting and the corresponding national debate on the potential dangers of Internet speech and overheated political rhetoric will taint the jury and prejudice it against certain defense arguments relating to the Defendant's constitutional rights. He maintains that in a few weeks, the Arizona shooting will no longer be the focus of the media and the community, and his opportunity to select an impartial jury will be greatly improved.

The Government opposes [Doc. 67] the requested continuance, arguing that recent media coverage of an unrelated case occurring over a thousand miles away is not grounds for continuing the January 19 trial. Moreover, the Government argues that if a continuance is granted,

further news coverage relating to the Arizona shooting could require yet another continuance of the trial at a later date. It asserts that the Defendant's argument that recent media coverage of the Arizona shooting would prevent him from having a fair trial is speculative, particularly when the parties have the opportunity to discover any prejudice in voir dire, the jurors are presumed to follow the District Judge's instructions, and no news articles have compared the Defendant's case to the Arizona shooting. The Government likens this case to one from the Northern District of Georgia, in which the defendant brought a habeas corpus challenge following the state court's refusal to continue his trial for the assault and murder of a schoolmate due to the publicity surrounding the shooting of the students at Columbine High School in Littleton, Colorado. Miller v. Martin, No. 1:04-CV-1120, 2006 WL 4093124 (N.D. Ga. Feb. 24, 2006), aff'd, 276 F. App'x 927 (11th Cir. 2008). In Miller, the district court held that the Georgia Supreme Court's denial of the defendant's claim that his trial was unfair was not contrary to and did not unreasonably apply federal constitutional law, "[g]iven that cases requiring the reversal of a conviction due to excessive, prejudicial pre-trial publicity are 'relatively rare[.]'" Id. at *7. Finally, the Government contends that granting this continuance would establish a bad precedent, permitting other defendants to request continuances whenever a crime similar to that with which they are charged is the subject of news articles and, thereby, impeding the Court's ability to bring cases to trial.

At the hearing, defense counsel responded that although media coverage of the Arizona shooting was likely to continue, as time passes, the intensity and recency of the coverage will fade. Defense counsel elaborated upon the parallels between the two cases and stated that his questioning of potential jurors about the Arizona shooting would only serve to remind everyone in the jury pool about the incident. Attorney Harwell stated that the Defendant is aware that he is

4

requesting a trial continuance and accedes to his advice that the trial should be delayed until the instant publicity over the Arizona shooting has diminished.

> The Supreme Court
>
> > has long recognized that adverse publicity can endanger the ability of a defendant to receive a fair trial. To safeguard the due process rights of the accused, a trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity. And because of the Constitution's pervasive concern for these due process rights, a trial judge may surely take protective measures even when they are not strictly and inescapably necessary.

Gannett Co., Inc. v. DePasquale, 443 U.S. 368, 378 (1979) (citations omitted). Although the Court finds that it is the rare case that should be continued due to potential prejudice from pretrial publicity relating to another case occurring in another state, this is such a singular case. See Nebraska Press Ass'n v. Stuart, 427 U.S. 539 (1976) (observing that cases in which pretrial publicity require a reversal are "relatively rare"). First, the Court finds that the publicity of the Arizona shooting has been widespread and constant. Furthermore, the Arizona shooting has caused the nation to consider and discuss the issues of political speech and mental health as they relate to violence. The tenor of this national discussion shows a bent toward conviction and punishment. Beyond the issue of speech and its relation to violence, the instant case and the Arizona shooting have a number of unique sub-issues that are similar, such as the military, children, judges, and mental health problems. The Court concludes that potential jurors would be inclined to relate the Arizona shooting to this case.

Although the Court is concerned about setting a bad precedent, the Court finds that the unique features of the Arizona shooting (the wounding of a sitting congressperson, the murder of a sitting judge, the attention given this case from the President and other national officials, the

5

heightened news coverage, and the national discussion, all within a week and a half of the Defendant's trial) are indeed and thankfully rare. The Court also finds that the intensity and recency of the publicity of the Arizona shooting will dissipate within a couple of months, permitting a fair trial for Defendant Jeffries. Accordingly, the Court finds that a continuance of the January 19, 2011 trial is appropriate under these limited facts and circumstances. The parties agreed on a new trial date of March 29, 2011, and that all of the time between the filing of the motion and the new trial date is fully excludable under the Speedy Trial Act.

The Court finds a continuance of the January 19, 2011 trial date to be necessary and that the ends of justice served by granting a continuance outweigh the interest of the Defendant and the public in a speedy trial. 18 U.S.C. § 3161(h)(7)(A). Given the recent intense publicity and public scrutiny of issues relating to the Arizona shooting, the Court finds that the failure to grant a trial continuance in this case would result in the miscarriage of justice for the reasons outlined above. 18 U.S.C. § 3161(h)(7)(B)(i). Accordingly, the Defendant's Emergency Motion for Continuance [**Doc. 69**] is **GRANTED**, and the trial of this matter is **CONTINUED** to **March 29, 2011**. The Court also finds, and the parties agree, that all the time between the filing of the Defendant's motion on **January 1, 2011**, and the new trial date of **March 29, 2011**, is fully excludable time under the Speedy Trial Act for the reasons set forth herein. See 18 U.S.C. § 3161(h)(7). With regard to additional scheduling, the new deadline for concluding plea negotiations is **March 8, 2011**. The Court instructs the parties that all motions *in limine* must be filed no later than **March 14, 2011**. Special requests for jury instructions shall be submitted to the District Court no later than **March 18, 2011**, and shall be supported by citations to authority pursuant to Local Rule 7.4.

## III. TEMPORARY RELEASE

The Defendant also asks [Doc. 54] that the Court permit his temporary release to his attorneys' custody pursuant to 18 U.S.C. 3142(i), so that he might prepare his defense. He states that on January 6, 2011, the Government provided previously undisclosed electronic data, purportedly relating to his Facebook account. Defense counsel maintain that they are not able to access the Defendant's Facebook account from their office computers, despite having his password, because of a security feature that requires the identification of photographs.

The Government responds [Docs. 59 and 62] that the Defendant has failed to show that his release is necessary for his defense. It contends that the Defendant may review the printed copy of his account, which was provided in discovery, and that defense counsel can access the Defendant's account without him, as apparently some third party–presumably the Defendant's wife–has been able to do after he was detained in this case. Finally, it contends that the Defendant continues to present a danger to the community and should not be released.

At the January 13 hearing, defense counsel acknowledged that the Defendant's wife had been able to log-in to the Defendant's Facebook account from their home computer in Clarksville and that defense counsel could potentially travel to Clarksville to access the Defendant's Facebook account. Nevertheless, Mr. Harwell argued that he needed the Defendant to be on the account with him so that the Defendant could demonstrate what his actions on his Facebook account on July 9, 2010. Defense counsel agreed that other investigative avenues might be available now that the time in which he had to prepare for trial was not so compressed.

Section 3142(i)(4) provides in pertinent part that "[t]he judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States

7

marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i)(4). In the present case, the Court finds that the Defendant has failed to show that his release is necessary for the preparation of his defense. The Court finds that there appear to be means short of release that would permit defense counsel to access and review the Defendant's Facebook account, such as traveling to Clarksville to use the Defendant's password on his home computer or, potentially, bringing a laptop computer to the facility where the Defendant is detained. The Court has found that the Defendant must be detained [Docs. 27 and 47] because he is a danger to the community. The Court will not permit his temporary release back into the community until counsel have demonstrated that other means of accessing the Defendant's Facebook account are wholly inadequate. Accordingly, the Defendant's Motion for Temporary Release [**Doc. 54**] is **DENIED**, at this time, with leave to refile should defense counsel determine that they can meet the showing of necessity in the future.

### IV. CONCLUSION

Accordingly, it is **ORDERED**:

(1) The Defendant's request to seal the January 12, 2011 motion hearing is **DENIED as moot**. Likewise, the Government's Motion for Leave to File Document Under Seal [**Doc. 66**] is **DENIED**. The Government's response [Doc. 67] shall be **UNSEALED**;

(2) The Defendant's Emergency Motion for Continuance [**Doc. 69**] is **GRANTED**;

(3) The trial of this matter is reset to commence on **March 29, 2011**, **at 9:00 a.m.**, before the Honorable Thomas W. Phillips, United States District Judge;

8

(4) All time between the filing of the Emergency Motion for Continuance on **January 11, 2011**, and the new trial date of **March 29, 2011**, is fully excludable time under the Speedy Trial Act for the reasons set forth herein;

(5) The new deadline for concluding plea negotiations is **March 8, 2011**;

(6) Any additional motions *in limine* must be filed no later than **March 14, 2011**;

(7) Special requests for jury instructions with appropriate citations shall be submitted to the District Court by **March 18, 2011**;

(8) The Defendant's Motion for Temporary Release [**Doc. 54**] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

  s/ C. Clifford Shirley, Jr.  
United States Magistrate Judge